24CA2113 Peo in Interest of Hayes 04-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2113
Pueblo County District Court No. 24MH30033
Honorable Timothy O'Shea, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Armound De Shaun Hayes,

Respondent-Appellant.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE MOULTRIE
Lipinsky and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary E. Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Armound De Shaun Hayes appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to medicate him involuntarily.  We affirm.

## I.     Background

¶ 2     After two prior admissions to the hospital in 2018 and 2023, Hayes was readmitted in May 2024 after being found incompetent to proceed in a criminal case.  He was experiencing agitation, irritability, and impulsivity, and was exhibiting hypersexual and physically aggressive behavior.  Soon after his admission, he was placed in seclusion and restraints and administered medications on an emergency basis after he grabbed a female staff member's buttocks and hit a male staff member in the face.

¶ 3     The next month, the district court granted the People's petition authorizing the involuntary administration of olanzapine (Zyprexa), valproic acid (Depakote), chlorpromazine (Thorazine), hydroxyzine (Vistaril), and lorazepam (Ativan).  On appeal, a division of this court affirmed the district court's order.  *See People in Interest of Hayes*, (Colo. App. No. 24CA1082, Sept. 19, 2024) (not published pursuant to C.A.R. 35(e)).

¶ 4     In November 2024, the People filed the petition at issue, again seeking authorization to medicate Hayes involuntarily with Zyprexa, Depakote, Thorazine, and Vistaril (but not Ativan).

¶ 5     At the hearing on the petition, Hayes's psychiatrist, an expert in clinical psychiatry, testified that Hayes's diagnosis was an unspecified mood disorder.  The psychiatrist opined that Hayes was mentally ill because he had "a substantial disorder of the cognitive volitional or emotional process that grossly impairs judgment or capacity to recognize reality or to control behavior."  At the time of the hearing, Hayes was taking Zyprexa, Depakote, and a low dose of Thorazine on a scheduled basis to stabilize his mood, decrease his irritability, and reduce his hypersexual and aggressive behavior.  He was also being given Vistaril and additional Thorazine on an as-needed basis for acute agitation.

¶ 6     According to the psychiatrist, Hayes had shown improvement on the medications in terms of his physical aggression, but he continued to be sexually inappropriate at times, including trying to corner female staff and proposition them.  The psychiatrist specified that the Thorazine remained necessary to decrease Hayes's inappropriate sexualized behavior, but that he hoped to treat Hayes

with only Zyprexa and Depakote in the future if Hayes remained stable and continued to improve.

¶ 7 The psychiatrist opined that, if Hayes were to stop taking the medications, his severe behaviors would return, he would pose a serious risk of harm to others in the hospital, and he would suffer a significant and likely long-term deterioration of his mental condition. The psychiatrist also testified that the involuntary medication order was necessary because Hayes did not believe he had a mental illness or needed any medication, and he had a history of refusing medication.

¶ 8 When asked whether he has a mental illness, Hayes testified, "I've been told I got ADHD, Anxiety, and Depression." But Hayes said he "kind of disagree[d]" with the psychiatrist's diagnosis that he has a mood disorder. He also denied being a danger to others unless he feels threatened or has uncontrollable impulses. Hayes clarified that he was willing to take Zyprexa and Depakote because "[t]hey help calm [him] down." However, Hayes said he did not want to take Thorazine and Vistaril — particularly Thorazine, because it made him fatigued and caused his speech to be slurred — and

3

testified that he would not take those medications without a court order.

¶ 9     Following the testimony, the district court found that the psychiatrist had testified credibly and persuasively, and it expressly adopted the psychiatrist's opinions. The court also noted its observation that Hayes was not slurring his speech during his testimony. The court examined each of the four elements of the test from *People v. Medina,* 705 P.2d 961, 973 (Colo. 1985); concluded that all four elements were met; and granted the petition.

## II.    Applicable Law and Standard of Review

¶ 10     Under the *Medina* test, a district court may authorize the involuntary administration of medication if the People demonstrate by clear and convincing evidence that (1) the person is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the person's need for treatment is sufficiently

4

compelling to override any bona fide and legitimate interest of the person in refusing treatment.[1]  *Id.*

¶ 11     Application of the *Medina* test involves mixed questions of fact and law.  *People v. Marquardt*, 2016 CO 4, ¶ 8.  We defer to the district court's factual findings if they have record support, while we review the court's legal conclusions de novo.  *Id.*  Resolving conflicts in testimony and determining the credibility of the witnesses are solely within the province of the fact finder.  *People in Interest of Ramsey*, 2023 COA 95, ¶ 23.

¶ 12     We must determine whether the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the district court's order.  *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13.  The testimony of the physician seeking to

---

[1] A different test applies to petitions to administer medication involuntarily for the purpose of restoring competency for a criminal proceeding.  *See Sell v. United States*, 539 U.S. 166, 181 (2003); *see also People in Interest of R.F.*, 2019 COA 110, ¶ 11 n.1.  Although Hayes was admitted to the hospital for that purpose, the parties agree — as do we — that the test from *People v. Medina*, 705 P.2d 961 (Colo. 1985), applies because the purpose of the petition here, and the district court's basis for granting the petition, was to prevent a significant and long-term deterioration in Hayes's mental condition and to prevent the likelihood of him causing serious harm to others.  *See R.F.*, ¶ 11 n.1.

administer treatment may be sufficient, without more, to satisfy the *Medina* test. *Id.* at ¶ 30.

### III.    Analysis

¶ 13    Hayes concedes that the second element of the *Medina* test was met. But he challenges the sufficiency of the evidence regarding the first, third, and fourth elements of the *Medina* test.

### A.    The First *Medina* Element

¶ 14    In addressing the first *Medina* element — that he was incompetent to effectively participate in the treatment decision — Hayes contends that the district court erred in basing its finding on the evidence that Hayes did not believe he had a mental illness or needed any medication. He then makes only a generalized argument that, "[i]f being involuntarily certified for mental health treatment is not enough [to meet the first *Medina* element], surely a mere disagreement regarding diagnosis cannot be sufficient."

¶ 15    We disagree. The psychiatrist and Hayes disagreed about Hayes's diagnosis. The psychiatrist testified that Hayes's diagnosis was an unspecified mood disorder, while Hayes said that he "kind of disagree[d]" with that diagnosis. More importantly, the psychiatrist testified that, if Hayes were to stop taking the requested

6

medications, his severe behaviors would return, he would pose a serious risk of harm to others in the hospital, and he would suffer a significant and likely long-term deterioration of his mental condition. But Hayes denied having severe behavior that he could not control and testified that, although he was willing to take Zyprexa and Depakote, he would not take Thorazine and Vistaril without a court order. His testimony that he would not take Thorazine and Vistaril voluntarily was consistent with the evidence presented of his history of refusing medication. Hayes also testified — although it is not clear whether he was referring to all four medications or just Thorazine and Vistaril — that the medications "have not helped [him] . . . [They] just kind of mess[ed] [him] up more."

¶ 16    Hayes's disagreement with the psychiatrist's diagnosis and the psychiatrist's opinion that the requested medications were necessary for Hayes to improve rather than deteriorate were at the core of why Hayes was incompetent to effectively participate in the treatment decision. It was up to the district court to resolve the conflicts in the evidence, and significantly, the district court found

the psychiatrist's testimony credible and persuasive, and it expressly adopted the psychiatrist's opinions. *See Ramsey*, ¶ 23.

¶ 17 Given the district court's credibility determination, its finding that the first *Medina* element was met was well supported, and we will not disturb it. *See id.*; *Marquardt*, ¶ 8; *R.K.L.*, ¶¶ 13, 30; *see also R.K.L.*, ¶¶ 6-7, 33 (affirming the district court's finding that the first *Medina* element was met where the patient's psychiatrist testified that the patient had schizophrenia with possible bipolar disorder, but the patient testified that he did not think that he had a mental illness); *People in Interest of Strodtman*, 293 P.3d 123, 132 (Colo. App. 2011) (affirming the district court's finding that the first *Medina* element was met based in part on the patient's history of medication refusal, explaining, "[t]o participate effectively contemplates action" not just "words").

## B. The Third *Medina* Element

¶ 18 In challenging the district court's finding on the third *Medina* element — that a less intrusive treatment alternative was not available — Hayes highlights the psychiatrist's testimony that, during his prior hospitalizations in 2018 and 2023, he was effectively treated with only Zyprexa and Depakote. He argues that

this history shows that he can be effectively treated with only those two medications, and that adding Thorazine and Vistaril constitutes a "far more invasive [and unnecessary] treatment plan."

¶ 19 Despite his *prior* history of effective treatment with only Zyprexa and Depakote, the record shows that Hayes's scheduled medications during his *current* hospitalization included, in addition to Zyprexa and Depakote, only a low dose of Thorazine. The psychiatrist testified that the scheduled Thorazine was added approximately one month before the hearing "to help [Hayes] stabilize due to his persistent, inappropriate, sexualized behavior," and that Vistaril and the additional Thorazine were being administered to Hayes only on an as-needed basis "to help him calm down when he goes through periods of being agitated, hypersexual, or physically aggressive." The psychiatrist further testified that Thorazine, specifically, remained necessary to decrease Hayes's inappropriate sexualized behavior. However, the psychiatrist also testified that he hoped to be able to treat Hayes with only Zyprexa and Depakote in the future if Hayes remained stable and continued to improve.

¶ 20    The court credited the psychiatrist's testimony and found that a less intrusive treatment alternative was not available.  We defer to that finding because it has record support.  *See Marquardt*, ¶ 8; *R.K.L.*, ¶¶ 13, 30; *Ramsey*, ¶¶ 23, 52-53.

### C.    The Fourth *Medina* Element

¶ 21    In his argument regarding the fourth *Medina* element — that the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment — Hayes contends that his interests in avoiding side effects "intensely" outweigh the State's interest.  He acknowledges that his primary complaint regarding side effects is slurred speech, but he also emphasizes that the *potential* side effects of the medications are extensive.

¶ 22    However, in his discussion of potential side effects, the psychiatrist testified that Hayes "is in a psychiatric unit that is staffed 24/7 with nurses who monitor him for all his complaints including side effect[s]," that the psychiatrist and nurse practitioner also regularly ask Hayes about any side effects he's experiencing, and that he is routinely given blood tests to detect any abnormalities in liver function or white blood cell count.  Given this

10

evidence, we discern no basis for reversal based on *potential* side effects that Hayes himself has not experienced. *See Marquardt*, ¶ 8; *R.K.L.*, ¶¶ 13, 30; *Ramsey*, ¶ 23.

¶ 23 And in terms of Hayes's reference to slurred speech, regardless of the district court's finding that Hayes was not slurring his speech at the hearing, the court did not err in finding, with record support, that Hayes's need for treatment was sufficiently compelling to override his interest in avoiding slurred speech. *See Marquardt*, ¶ 8; *R.K.L.*, ¶¶ 13, 30; *Ramsey*, ¶ 23.

## IV. Disposition

¶ 24 The order is affirmed.

JUDGE LIPINSKY and JUDGE JOHNSON concur.